JOE DUTKIEWICZ,

       Plaintiff,                          Case No. 1:15-cv-163

v.

                                            HON. JANET T. NEFF

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant,
_____/

## OPINION

This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner). Plaintiff Joe Dutkiewicz seeks review of the Commissioner's decision denying his claim for disability insurance benefits (DIB) under Title II of the Social Security Act.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1998). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the

Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health and Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff was 52 years of age on the date of the Administrative Law Judge's (ALJ) decision. (Tr. 11, 34). He graduated high school and was previously employed as a delivery truck driver and grinder II. (Tr. 36, 59–60). Plaintiff applied for benefits on August 7, 2012, alleging that he had been disabled since January 25, 2012, due to deteriorating discs in his back, back pain, a swollen right knee, a broken right ankle, a longer left leg than his right, diabetes, high cholesterol,

2

heart concerns, blood clots in his lungs, fatigue from his medications, and dizziness. (Tr. 66–67, 113–114). Plaintiff's application was denied on November 9, 2012, after which time he requested a hearing before an ALJ. (Tr. 81–92). On August 7, 2013, Plaintiff appeared with his counsel before ALJ Henry Kramzyk for an administrative hearing with testimony being offered by Plaintiff and a vocational expert (VE). (Tr. 30–65). In a written decision dated October 11, 2013, the ALJ determined that Plaintiff was not disabled. (Tr. 11–29). Thereafter, the Appeals Council declined to review the ALJ's determination, making it the Commissioner's final decision in the matter. (Tr. 1–5). Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a

---

1

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. § 404.1520(f)).

3

nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

Plaintiff has the burden of proving the existence and severity of limitations caused by his impairments and that he is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

ALJ Kramzyk determined Plaintiff's claim failed at the fourth step of the evaluation. The ALJ initially found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. (Tr. 16). At the second step in the sequential evaluation, the ALJ determined Plaintiff had the following severe impairments: (1) degenerative disc disease of the lumbar spine; (2) sacroilitis; (3) obesity; and (4) degenerative joint disease of the knees bilaterally, status post right knee replacement. (Tr. 16). At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments. (Tr. 17–18). At the fourth step, the ALJ found that Plaintiff retained the residual functional capacity (RFC) based on all the impairments:

> to perform sedentary work as defined in 20 CFR 404.1567(a) in that he could lift and carry 10 pounds occasionally and less than 10 pounds frequently and could sit for a total of six (6) hours in an eight (8) hour workday, and stand or walk for two (2) hours total in an eight (8) hour workday, except: the claimant can occasionally push/pull foot controls with the right lower extremity; the claimant requires the use of a cane for ambulation; the claimant can never climb ladders, ropes, and scaffolds, or kneel, or crawl; the claimant can occasionally climb ramps and stairs, and balance, stoop, and crouch; the claimant must avoid concentrated exposure to extreme cold, and wetness, including wet, slippery, uneven surfaces; the claimant must avoid concentrated exposure to vibration, and hazards such as dangerous machinery and unprotected heights.

(Tr. 18).

The ALJ also found at the fourth step, based off the VE testimony, that Plaintiff could perform his past relevant work as a grinder II. (Tr. 24–25, 61–62). The ALJ found that this work did not require the performance of work related activities precluded by his RFC. (Tr. 24–25). Accordingly, the ALJ determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from January 25, 2012 (the alleged onset date) through October 11, 2013 (the date of the decision). (Tr. 25).

**DISCUSSION**

Plaintiff's Statement of Errors raises the following issues:

1. Whether the ALJ erred in not giving treating specialist Dr. Kolinski's opinion controlling weight and whether the ALJ erred in failing to weigh it in general;

2. Whether the ALJ improperly analyzed Plaintiff's obesity;

3. Whether the ALJ erred in failing to find Plaintiff disabled for a closed period of disability;

4. Whether the ALJ erred in failing to build an accurate and logical bridge between the evidence and the result in relation to the coagulation and spine impairments and to the ability to sit in a full time job; and

5. Whether the ALJ failed to consider Plaintiff's consistent and arduous work history in determining Plaintiff's credibility.

(Dkt. #12, PageID 770). The Court will discuss the issues below.

**A.     Dr. Kolinski**

On July 11, 2013, Dr. Kolinski examined Plaintiff and noted, under a section regarding Plaintiff's treatment plan, that he "has multiple problems that contribute to his chronic pain complaints. Essentially it is clear to me that he is unable to work due to the [nature] of his pain and co-morbidities." (Tr. 708). While the ALJ cited several treatment notes of Dr. Kolinski, the ALJ

5

did not discuss Dr. Kolinski's statement that Plaintiff was unable to work. Plaintiff argues that because Dr. Kolinski was a treating physician, his statement should be given controlling weight.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375–76 (6th Cir. 2013) (*quoting* 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Servs.*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (*citing Shavers v. Sec'y of Health and Human Servs.*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (*citing Shavers,* 839 F.2d at 235 n.1); *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286–87 (6th Cir. 1994).

If an ALJ gives less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (*quoting Wilson v. Comm'r of*

6

*Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Id.* at 376–77.

The flaw in Plaintiff's argument is that the statement from Dr. Kolinski is not a medical opinion that could be entitled to controlling weight. A medical opinion is defined as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2); 416.927(a)(2). While medical opinions offered by treating sources are generally accorded deference, statements that a claimant suffers from unspecified limitations or is disabled or unable to work, as here, are entitled to no deference because the determination of disability is a matter left to the Commissioner. *See* 20 C.F.R. § 404.1527(d)(1).

Because the statement in question is not properly characterized as a medical opinion, the ALJ properly disregarded such. *See, e.g., West v. Astrue*, 2011 WL 825791 at *8 (E.D. Tenn., Jan. 19, 2011) ("it was reasonable for the ALJ to omit discussion of Dr. Coffey's opinion because it was not a 'medical opinion' as defined by 20 C.F.R. § 416.927(a)(2)"); *Koller v. Astrue*, 2011 WL 5301569 at *5 (E.D. Ky., Nov. 3, 2011) (the ALJ is not required to defer to statements by physicians concerning matters reserved to the Commissioner). Accordingly, Plaintiff's claim fails.

### B. Plaintiff's Obesity

Plaintiff next argues that because the ALJ failed to properly evaluate and consider his obesity, the RFC determination is not supported by substantial evidence.

While obesity is no longer considered a "listed impairment" by the Social Security

7

Administration, the effect of obesity on a claimant's ability to work must be specifically considered. *See, e.g.*, SSR 02–01P, Titles II and XVI: Evaluation of Obesity, 2002 WL 34686281 (Sept. 12, 2002); *Shilo v. Comm'r of Soc. Sec.*, 600 Fed. Appx. 956, 959 (6th Cir., Jan. 28, 2015) ("[A]n ALJ must consider the claimant's obesity, in combination with other impairments, at all stages of the sequential evaluation.") (internal quotations omitted).

The ALJ is not obligated to employ any "particular mode of analysis" when assessing the impact of a claimant's obesity. *See Shilo*, 600 Fed. Appx. at 959. Nevertheless, the ALJ must do more than merely "mention the fact of obesity in passing." *Id*. As the Sixth Circuit recently reiterated:

> Obesity . . . must be considered throughout the ALJ's determinations, 'including when assessing an individual's residual functional capacity,' precisely because 'the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately.'

*Shilo*, 600 Fed. Appx. at 959 (*quoting* SSR 02–1P, 2002 WL 34686281 at *1–2).

The rationale for specifically considering the effect of obesity on a claimant's ability to function and perform work activities is straightforward:

> Obesity' commonly leads to, and often complicates, chronic diseases of the cardiovascular, respiratory, and musculoskeletal body systems.' For example, 'someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone.' The ALJ also must specifically take into account 'the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment,' and consider how 'fatigue may affect the individual's physical and mental ability to sustain work activity'-especially in 'cases involving sleep apnea.'

*Shilo*, 600 Fed. Appx. at 959 (*quoting* SSR 02–1P, 2002 WL 34686281 at *3–6).

The record shows the ALJ considered Plaintiff's obesity throughout the decision. At

8

step 2, the ALJ determined Plaintiff's obesity was a severe impairment. (Tr. 16). At step 3, the ALJ found that Plaintiff did not meet or equal a listing in the Listing of Impairments, but noted his responsibility to consider Plaintiff's obesity under SSR 02-1P, and concluded "the undersigned has meaningfully considered the effect of a claimant's obesity, individually and in combination with his other impairments, on his workplace function at step three and at every subsequent step." (Tr. 18). In considering Plaintiff's RFC at step 4, the ALJ noted that Plaintiff had lost weight and currently weighed less than he did when he was working. The ALJ determined that, "[a] review of the evidence shows that the claimant has severe musculoskeletal impairments and obesity that is severe in combination even if it is less than the level of obesity he worked with." (Tr. 20, 22).

As demonstrated, the record reflects that the ALJ mentioned Plaintiff's weight and diagnosis of obesity and considered it in combination with Plaintiff's other impairments. The ALJ's explicit discussion of Plaintiff's obesity indicates sufficient consideration of his obesity under the regulations and SSR 02–01p. *See Coldiron v. Comm'r of Soc. Sec.*, 391 Fed. Appx. 435, 443 (6th Cir. 2010); *Allen v. Colvin*, No.3:10–cv–01024, 2014 WL 1775564 at *21 (M.D. Tenn. April 29, 2014). Accordingly, Plaintiff's claim of error is denied.

### C. Closed Period of Disability

Plaintiff next argues that the ALJ erred by not considering whether he was disabled under a closed period of disability. In support of this position, Plaintiff cites to case law from the Eighth Circuit, *Harris v. Sec'y of Dep't. of Health & Human Servs.*, 959 F.2d 723 (8th Cir. 1992). That case stands for the unremarkable proposition that the Commissioner may award Social Security disability benefits either on a continuing basis or, where a once-disabling condition later ceases to be disabling, for a "closed period." *Id.* at 724.

9

As an initial matter, at this stage of review it is not enough for Plaintiff to demonstrate that substantial evidence could lead to a finding that he is disabled, but rather the proper inquiry is whether substantial evidence supports the decision made by the Commissioner. *Jones*, 336 F.3d at 477. Even if this were not so, Plaintiff does not point to any evidence demonstrating that he should be found disabled during a closed period.

In this case, the ALJ's decision does not contain a specific finding stating that he considered a closed period of disability, but Plaintiff cites to no authority requiring that an ALJ do so. The ALJ did, however, consider the record as a whole, which included medical evidence predating Plaintiff's alleged onset of disability through the date of the decision. (Tr. 18–24). The Court finds that the examination of the whole record necessarily demonstrates that the ALJ found Plaintiff did not demonstrate a closed period of disability. This conclusion is supported by similar decisions in other courts. *See Evers v. Astrue*, No. 3:12-CV-118, 2013 WL 1305627, at *12 (E.D. Tenn. Jan. 2, 2013) *report and recommendation adopted*, No. 3:12-CV-118, 2013 WL 1301777 (E.D. Tenn. Mar. 28, 2013) (collecting cases). Accordingly, Plaintiff's claim of error is denied.

### D. Plaintiff's Blood Clotting Disorder

Plaintiff next claims that the ALJ's conclusion he can perform sedentary work is unsupported by substantial evidence. In a convoluted argument, Plaintiff reasons this is so because he can only perform sedentary work if his back pain is under control. To relieve his back pain, however, Plaintiff argues he requires steroid injections, but those injections do not allow for Plaintiff's anti-blood clotting medication. Without that medication, Plaintiff contends, he cannot perform sedentary work because he would be at risk of blood clots. Thus, Plaintiff reasons, he cannot perform sedentary work because of his back pain, and the only remedy for his back pain

precludes his ability to perform sedentary work. (Dkt. #12, PageID 776).

Substantial evidence supports the ALJ's conclusion that Plaintiff is capable of performing sedentary work. For example, the ALJ gave substantial weight to the opinion of Dr. Shanthini Daniel, who reviewed the record for the state agency and opined on Plaintiff's physical RFC. (Tr. 24) Dr. Daniel noted Plaintiff's complaints of blood clots, but nonetheless concluded Plaintiff could perform sedentary work. (Tr. 71). Dr. Daniel's conclusion is bolstered by the findings of Dr. Kuiper, who noted Plaintiff largely benefitted from his injections and medications, noting that they "were maintaining functionality with minimal side effects." (Tr. 261). Notably, despite Plaintiff's claim that his back pain can only be controlled through injections the record shows that after ending his steroid injections, Plaintiff nonetheless reported that his pain was "well controlled" on his medications, and that osteopathic manipulation helped his overall function. (Tr. 450, 455).

At bottom, Plaintiff is merely offering his lay opinion that he can only perform sedentary work if he receives steroid injections for his back pain, but this opinion is unsupported by the record which provides substantial evidence for the ALJ's step 4 analysis. Plaintiff's claim of error is therefore denied.

### E. Credibility

At the administrative hearing, Plaintiff argued he was impaired to a far greater extent than that recognized by the ALJ. Specifically, Plaintiff stated he could barely use his hands for gripping, and could only sit or stand for fifteen minutes before he had to change positions. (Tr. 47). The ALJ discounted Plaintiff's testimony on the grounds that it was not fully credible. (Tr. 22–23). After review, the Court finds no error.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added); *see also Grecol v. Halter*, 46 Fed. Appx. 773, 775 (6th Cir. 2002) (same). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)); *Hash v. Comm'r of Soc. Sec.*, 309 Fed. Appx. 981, 989 (6th Cir., Feb. 10, 2009). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Comm'r of Soc. Sec.*, 105 Fed. Appx. 794, 801 (6th Cir. July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (*citing Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 105 Fed. Appx. at 801 (*citing Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be

accorded great weight and deference." *Id.*; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 780 (6th Cir. 1987). In fact, as the Sixth Circuit recently stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Comm'r of Soc. Sec.*, 540 Fed. Appx. 508, 511 (6th Cir., Oct. 4, 2013) (citation omitted).

The ALJ's decision includes a lengthy discussion regarding Plaintiff's credibility. The ALJ began by listing the factors he was required to consider in assessing Plaintiff's credibility.[2] (Tr. 19). After a discussion of the record, the ALJ concluded:

---

[2]As stated in the CFR, these factors include:

  (i)    Your daily activities;
  (ii)   The location, duration, frequency, and intensity of your pain or other symptoms;
  (iii)  Precipitating and aggravating factors;
  (iv)  The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
  (v)   Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
  (vi)  Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
  (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529

> The claimant is not fully credible. The medical evidence indicates he has had a good response to medications for pain and that treatment has generally been effective. Examinations show he has had predominately mildly antalgic gait and ambulated without difficulty. He had the ability to exercise moderately in 2011 and has never been noted to be in acute pain distress during any examination. He was throwing a softball in 2012 and he stated he was too busy to attend physical therapy. However, he continued to report having extreme levels of pain that normally require emergency room treatment. Moreover, at [the] hearing he claimed he had severe limitation in his arms and hands due to numbness but there is no supportive evidence. The claimant's subjective reports are grossly inconsistent with the objective medical evidence and undermine his general credibility, as does his testimony that he collective unemployment and looked for work after his alleged onset date.

(Tr. 22–23).

The ALJ therefore discounted Plaintiff's credibility based on a number of reasons, including Plaintiff's receipt of unemployment benefits, Plaintiff's positive response to medications, the inconsistency between Plaintiff's subjective reports of pain and examination notes, Plaintiff's activities of daily living, and refusal to participate in physical therapy because he was too busy. The ALJ's conclusion is supported by substantial evidence. (Tr. 38, 118–19, 248, 254, 280, 314, 446).

Plaintiff argues that the ALJ erred because the ALJ did not account for Plaintiff's lengthy work history. A claimant's work history, however, is only one of the many factors that the ALJ can consider in making his credibility determination. *See* 20 C.F.R. § 404.1529; *see also White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 287 (6th Cir. 2009). The record shows the ALJ considered Plaintiff's work history, but nonetheless found Plaintiff's testimony to be less than fully credible. (Tr. 22–23, 25). As shown, this determination is supported by substantial evidence. Plaintiff's claim of error is denied.

## **CONCLUSION**

For the reasons set forth herein, the Commissioner's decision will be **AFFIRMED**. A separate judgment shall issue.


Dated: December 14, 2015                                /s/ Janet T. Neff
                                                        JANET T. NEFF
                                                        United States District Judge